UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMANDA ROCHE,

                    Plaintiff,

          -against-

G4S SECURE SOLUTIONS (USA) INC.,

                    Defendant.
------------------------------------------------------------X

Case No.:

COMPLAINT

Plaintiff, AMANDA ROCHE, (hereinafter "Plaintiff"), by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

**Nature of the Case**

1. This matter is about a woman who was faced with sexual harassment shortly after being hired by Defendant. Defendant was aware of Plaintiff's harasser making inappropriate sexual comments to female employees in the past and failed to take appropriate measures to protect their employees. Plaintiff complained of the sexual harassment and was terminated shortly after Defendant claimed that Plaintiff was "a liability."

2. Plaintiff complains pursuant to the <u>New York State Human Rights Law</u>, New York State Executive Law § 296, *et seq.* ("NYSHRL"); the <u>New York City Human Rights Law</u>, New York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL") and civil claims of Negligent Hiring/Retention/Supervision. Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of her sex/gender, sexually harassed, subjected to a hostile work environment, retaliated against after making complaints of discrimination resulting in her unlawful termination.

1

## Jurisdiction and Venue

3. Jurisdiction of this Court is proper under 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the claims alleged herein took place within the Southern District of New York.

## Procedural Prerequisites

5. Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the certificate of service of the complaint on the NYCCHR and the Corporation Counsel is annexed hereto as <u>Exhibit A</u>.

## Parties

6. Plaintiff is a resident of the County of New York in the State of New York.

7. At all times material, Defendant G4S SECURE SOLUTIONS (USA) INC. ("G4S") is and was a foreign business corporation organized under the laws of the State of Florida and operating in the State of New York, with its principal place of business located at 1395 University Boulevard, Jupiter, Florida 33458.

8. At all times material, Defendant G4S owns, operates and maintains a security company providing a variety of security-based services nationwide.

9. At all times material, Defendant G4S was Plaintiff's employer under the NYSHRL.

10. At all times material, Defendant G4S was Plaintiff's employer under the NYCHRL.

11. At all times material, all parties mentioned herein worked and/or continue to be employed by Defendant.

## Material Facts

12. In or around mid-February 2021, Plaintiff interviewed for the position of a full-time security guard with Defendant.

13. On or about February 26, 2021, Plaintiff was contacted by Clarissa Willis ("Willis"), an employee of Defendant. Willis informed Plaintiff that she was to begin her employment on March 2, 2021, at the Consolidated Edison location located at 750 East 16 Street, New York, New York.

14. In or around late February 2021, Plaintiff began working for Defendant as a full-time security guard earning approximately $15.00 per hour, or approximately $31,200 per year, excluding benefits.

15. Plaintiff was qualified for her position and performed her duties well.

16. On or about March 3, 2021, Plaintiff arrived at the aforementioned location. Plaintiff spoke with Officer Stevens who told Plaintiff that she was supposed to be training at Consolidated Edison's Headquarters located at 4 Irving Place, New York, New York ("the Location").

17. Plaintiff swiftly made her way to the Location where she was greeted by her supervisor, Bowen ("Bowen").[1]

18. Bowen escorted Plaintiff around the Location and taught Plaintiff basic training. Bowen subsequently posted Plaintiff in the back of the Location where the loading docks are located.

---

[1] Plaintiff and her colleagues referred to Bowen as "Captain."

19. There are two guards posted in the loading dock area of the Location – one in the entrance and one in the back. Plaintiff was posted in the back of the loading dock area with the Consolidated Edison workers.

20. Many Consolidated Edison workers introduced themselves, including an individual by the name of "Nigel."

21. "Nigel" asked Plaintiff if she was new, and stated, in sum and substance "I am glad to see a woman's face around the loading dock area."

22. Plaintiff ignored "Nigel" and began speaking with her colleague, "Greg."

23. "Greg" and Plaintiff began speaking about celebrities, and Plaintiff expressed her admiration for Madonna. "Nigel" overheard the conversation and yelled "Madonna is a whore!" Plaintiff and "Greg" looked each other in shock and ended the conversation, leaving Plaintiff and "Nigel" alone in the area.

24. "Nigel" proceeds to continue with the conversation and explained that he admires pornography stars as celebrities. **"Nigel" then told Plaintiff, in sum and substance, that he loved amateur pornography, and films himself performing amateur pornography. "Nigel" explained that he even posts ads online looking for women to make pornography videos with.** Plaintiff was extremely uncomfortable and remained silent.

25. "Nigel" proceeded to ask Plaintiff where she likes to hang out in New York City. Plaintiff explained that she enjoyed going to Central Park and a few other locations. "Nigel" stated, in sum and substance, that he frequents a park by his home regularly and always sees a woman who takes her child to the same park.

26. **As "Nigel" became more comfortable, he told Plaintiff that the woman offers her 10-year-old daughter to "Nigel" for money and he films her while she was naked as she performed sexual acts to herself.**

27. Plaintiff was in absolute shock and disgusted, and informed "Nigel" that she had to make her rounds. Plaintiff proceeded to leave the area.

28. On or about March 4, 2021, Plaintiff went back to the Location and was put with another colleague. Plaintiff and her colleague began speaking, whereafter she disclosed what had transpired between her and "Nigel" the day before. Plaintiff's colleague informed her to report it to Bowen immediately.

29. Initially Plaintiff was hesitant to report what had occurred in fear of losing her job, but Plaintiff mustered up the strength to report it to Bowen.

30. Shortly after, Plaintiff reported the situation to Bowen in tears. Shockingly, in response, Bowen stated, in sum and substance, "**he has a reputation for harassing female guards who look like [Plaintiff], especially if they were mothers.**" Bowen even disclosed to **Plaintiff that "Nigel" was caught watching child pornography on the computers at the Location**. Plaintiff subsequently submitted a formal report and spoke to an individual from Defendant's Human Resources Department who indicated they would "be in touch."

31. Bowen informed Plaintiff that she wanted Plaintiff to continue her shifts at the Location until March 6, 2021 as she was a "good fit," and the Location was in close proximity to her house.

32. On or about March 6, 2021, Plaintiff arrived at the Location for her scheduled shift. Plaintiff's colleagues continued to approach her and ask if she was okay. It was clear that word got around about what "Nigel" had subjected Plaintiff to.

33. Plaintiff did not hear from Defendant to resume work until March 10, 2021.

34. On or about March 10, 2021, Plaintiff spoke with Willis on the phone. Plaintiff expressed that she was upset and anxious about her interaction with "Nigel." Willis informed Plaintiff that Plaintiff was going to be put back on the schedule at the Location.

35. Later that day, Plaintiff received a call from Justin Cenname ("Cenname"). By listening to Cenname's demeanor, it appeared to Plaintiff that he was bothered and did not want to speak to her. Cenname explained that Plaintiff was going to continue her training at the Location as a part-time employee rather than a full-time employee.

36. Plaintiff was confused as she was a full-time employee prior to her making a complaint to Defendant about "Nigel."

37. On or about March 11, 2021, Plaintiff received notice at 6:00 P.M. indicating that she needs to pick up her new uniforms for the following day. Plaintiff became aware that the store that she would get the uniforms from closes at 8:00 P.M. Plaintiff scrambled to obtain the uniform prior to the store closing.

38. On or about March 12, 2021, Plaintiff arrived at the Location and immediately began crying at her arrival. It was clear that Location triggered Plaintiff's emotions as Defendant was not taking Plaintiff's complaint of sexual harassment seriously. Plaintiff took a few days off to recollect and rest.

39. A few days later, Bowen contacted Plaintiff to check in. Shockingly, Bowen informed Plaintiff, in sum and substance, that Defendant was **"trying to figure out what to do with [Plaintiff] and that [Plaintiff] should start looking for another job. [Defendant's] executives do not want [Plaintiff] working for them anymore because [Plaintiff] was a liability."** Plaintiff was in absolute awe of what she was hearing.

40. Plaintiff understood that being a "liability" was complaining of sexual harassment in the workplace.

41. On or about March 22, 2021, Plaintiff contacted Defendant's Human Resources Representative, Karina Sanchez ("Sanchez"). Plaintiff explained what had occurred, to which Sanchez asked Plaintiff where she would like to be placed. Plaintiff explained that she did not have a preference, however, wanted to be placed at a location where she did not have to stand for a long period of time.

42. Plaintiff never received a response from Sanchez.

43. On or about April 2, 2021, Plaintiff contacted Sanchez again and informed her that Plaintiff has been waiting for work.

44. On or about April 5, 2021, Sanchez told Plaintiff to re-send her resume as Defendant did not have it on file. Plaintiff was confused and explained that she was already hired by the company and did not understand the need for her resume again. Sanchez informed Plaintiff that there is only a position available as a security guard in a bank. Plaintiff was frustrated and informed Sanchez that she was unable to stand for long period of time. Plaintiff expressed that she was disappointed that as a victim of sexual harassment, she believed that she was not being treated fairly. Shockingly, in response, Jonathan Hernandez ("Hernandez") gaslit Plaintiff and accused her of being disrespectful.

45. Plaintiff never heard from Defendant after the April 5, 2021 e-mail exchange.

46. It is clear, due to the close temporal proximity between Plaintiff complaining to Defendant of sexual harassment and her subsequent termination, that Defendant unlawfully retaliated against Plaintiff and terminated her due to her complaints of sexual harassment.

47. Defendant created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform her job.

48. The above are just some of the ways Defendant regularly and continually harassed Plaintiff while employing Plaintiff.

49. Defendant treated Plaintiff this way solely due to Plaintiff's sex/gender (female).

50. Defendant acted intentionally and intended to harm Plaintiff.

51. Defendant unlawfully sexually harassed, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

52. Plaintiff was repulsed, offended, disturbed, humiliated, victimized, and disgusted by this blatantly unlawful sexual harassment, discrimination, and hostile work environment.

53. Plaintiff was subjected to such a discriminatory, retaliatory, hostile and abusive work environment that no reasonable person in Plaintiff's shoes could or should be expected to endure.

54. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendant.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

56. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57. Defendant acted maliciously, willfully, outrageously, and with full knowledge of the law.

58. As such, Plaintiff demands punitive damages as against Defendant.

**First Cause of Action for Discrimination**
**Under the New York State Executive Law**

59. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

60. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

61. Defendants discriminated against Plaintiff on the basis of her sex/gender.

62. Defendants created a hostile work environment due to Plaintiff's sex/gender.

63. Plaintiff suffered sexual harassment in the hands of Defendant, based on her sex/gender.

64. Defendant G4S violated the section cited herein as set forth.

65. Plaintiff is entitled to the maximum amount allowed under this statute.

**Second Cause of Action for Discriminatory Discharge**
**Under the New York State Executive Law**

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

68. Plaintiff suffered a discriminatory termination due to her sex/gender.

69. Defendant G4S violated the section cited herein as set forth.

70. Plaintiff is entitled to the maximum amount allowed under this statute.

### Third Cause of Action for Retaliation
### Under the New York State Executive Law
### (Against All Defendants)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. New York State Executive Law § 296(7) provides that:

> It shall be an unlawful discriminatory practice:
>
> (e) For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

73. Defendant G4S violated the sections cited herein as set forth.

74. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Discrimination
### Under the New York City Administrative Code

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

10

77. Defendants discriminated against Plaintiff on the basis of her sex/gender.

78. Defendants created a hostile work environment due to Plaintiff's sex/gender.

79. Plaintiff suffered sexual harassment in the hands of Defendant, based on her sex/gender.

80. Defendant G4S violated the section hereto as set forth.

81. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fifth Cause of Action for Discriminatory Discharge
### Under the New York City Administrative Code

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

84. Defendant G4S violated the section hereto as set forth.

85. Plaintiff is entitled to the maximum amount allowed under this statute.

### Sixth Cause of Action for Retaliation
### Under the New York City Administrative Code

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

88. Defendant violated the section hereto as set forth.

89. Plaintiff is entitled to the maximum amount allowed under this statute.

### Seventh Cause of Action for Negligent Supervision
### Under the New York Common Law

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury. *See* S.C. v. N.Y. City Dep't of Educ., 97 A.D.3d 518, (N.Y. App. Div. 2012)(internal citations omitted).

92. Defendant G4S engaged in negligent supervision of employees by hiring and retaining employees which Defendant knew or should have known had a propensity for discriminatory, harassing and violent conduct.

93. Specifically, Plaintiff's supervisor "Bowen" had informed Plaintiff that Defendant was aware of "Nigel" and his predatory tendencies as he previously preyed on women who looked similar to Plaintiff.

94. Defendant violated the section hereto as set forth.

95. Plaintiff is entitled to the maximum amount allowed under this statute.

### Jury Demand

96. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the New York State Human Rights Law, New York State Executive Law § 296, *et. seq.*, and

the New York City Administrative Code, New York City Administrative Code § 8-502(a), in that Defendant discriminated against Plaintiff and created a hostile work environment based on Plaintiff's sex/gender (female), sexually harassed Plaintiff, and retaliated against Plaintiff after making complaints of discrimination resulting in her unlawful termination;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering and injury to Plaintiff's reputation in an amount to be proven;

D.  Awarding Plaintiff damages for loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff liquidated damages;

G.  Awarding Plaintiff prejudgment interest;

H.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
February 22, 2023

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

By: _____
Stefanie Shmil
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sshmil@tpglaws.com

# EXHIBIT A



**PHILLIPS & ASSOCIATES**
ATTORNEYS AT LAW
45 BROADWAY SUITE 430, NEW YORK, NY 10006
TEL: 212-248-7431   FAX: 212-901-2107
WWW.HARASSMENTLAWFIRM.COM
A NEW YORK PROFESSIONAL LIMITED LIABILITY COMPANY

February 22, 2023

**Via USPS First-Class Mail**
Annabel Palma, Chair
New York City Commission on Human Rights
22 Reade Street
New York, New York 10007

**Via Email**
Georgia Pestana, Esq.
Corporation Counsel of the City of New York
New York City Law Department
100 Church Street
New York, NY 10007
ServiceECF@law.nyc.gov

    Re: Amanda Roche v. G4S Secure Solutions (USA) Inc.

Dear Ms. Palma & Ms. Pestana:

  Pursuant to the notice requirements of Section § 8-502, et. sq. of the New York City Administrative Code, please find enclosed a copy of the Complaint in the above-referenced action. This complaint is being filed in the United States District Court for the Southern District of New York.

  Thank you for your attention. Please contact this office should you have any questions.

                Respectfully submitted,

                Stefanie Shmil, Esq.